**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

---------------------------------------------------------------------------X

JACQUELINE D. BAVIER,

                    Plaintiff,

              - against -

HOFSTRA UNIVERSITY, and
EVELYN MILLER-SUBER, *Individually*,

                    Defendants.

---------------------------------------------------------------------------X

Case No.: 19-cv-00943

**AMENDED COMPLAINT**

**PLAINTIFF DEMANDS**
**A TRIAL BY JURY**

Plaintiff, JACQUELINE D. BAVIER, by and through her attorneys, the LAW OFFICE OF YURIY MOSHES, P.C., hereby complains of the Defendants, upon information and belief, as follows:

### NATURE OF THE CASE

1. Plaintiff complains pursuant to the <u>Americans with Disabilities Act of 1990</u>, 42 U.S.C. § 12101, *et seq.* ("ADA") and the <u>New York State Human Rights Law</u>, New York State Executive Law §296 et. seq. ("NYSHRL")*,* and seeks damages to redress the injuries Plaintiff has suffered as a result of being **Denied a Reasonable Accommodation**, **Discriminated against**, **Retaliated against** for complaining of discrimination and subsequently **Terminated** by her employer due to her **Disability, use of her service animal, and complaints thereof.**

### JURISDICTION AND VENUE

2. Jurisdiction of this Court is proper under 42 U.S.C. §12101 et. seq., and 28 U.S.C. §§ 1331 and 1343.

3. The Court has supplemental jurisdiction over the claims brought under state law pursuant to

28 U.S.C. §1367.

4. Venue is proper in this District pursuant to 28 U.S.C. §1391(b) because the acts complained of occurred therein.

## PROCEDURAL PREREQUISITES

5. Plaintiff filed charges of discrimination upon which this Complaint is based with the Equal Employment Opportunities Commission ("EEOC").

6. On or about February 15, 2019, Plaintiff received a Notice of Right to Sue from the EEOC, dated February 22, 2018, with respect to the herein charges of discrimination. A copy of the Notice is annexed hereto.

7. This action has been filed within 90 days of Plaintiff's receipt of her "Notice of Right to Sue" letter from the EEOC.

## PARTIES

8. That at all times relevant hereto, Plaintiff JACQUELINE D. BAVIER ("BAVIER") was a resident of the State of New York. Plaintiff BAVIER suffers from Posttraumatic Stress Disorder ("PTSD"), a disability as defined within the ADA and utilizes a service animal.

9. That at all times relevant hereto, Defendant HOFSTRA UNIVERSITY ("HOFSTRA") was and still is an independent not-for-profit educational institutional chartered by the NYS Department of Education or other legal entity duly organized and existing under and by virtue of the laws of the State of New York. Upon information and belief, at all times herein mentioned, Defendant HOFSTRA maintained a principal place of business in the County of Nassau, and State of New York. Defendant HOFSTRA employed Plaintiff at all applicable times mentioned herein. At all relevant times herein, Defendant HOFSTRA employed twenty (20) or more employees.

10. That at all times relevant hereto, Defendant EVELYN MILLER-SUBER ("MILLER-SUBER") was an employee of Defendant HOFSTRA, holding the position of "Director of Human Resources."

11. That at all times relevant hereto, Defendant MILLER-SUBER was Plaintiff's supervisor and/or had supervisory authority over Plaintiff.

12. That at all times relevant hereto, Defendant HOFSTRA and Defendant MILLER-SUBER are collectively referred to herein as "Defendants."

## MATERIAL FACTS

13. On or about August 8, 2014, Plaintiff interviewed at Defendant HOFSTRA and was offered the position of Resident Director. At that time Plaintiff informed Defendants of her need of a service animal, ("Lady"). Defendants indicated that would pose no problem and requested documents from Plaintiff to support her need for Lady.

14. On or around August 11, 2014, Plaintiff BAVIER submitted medical and service animal documentation to Defendant HOFSTRA via certified mail. Among other services, Lady assists Plaintiff in bringing her anxiety into her awareness when in a dissociated state and applies physical pressure to Plaintiff's chest to assist her in regulating her breathing when experiencing panic attacks.

15. On or about August 26, 2014, Plaintiff BAVIER met with Defendant MILLER-SUBER. At that meeting Plaintiff BAVIER signed an assistance animal agreement, which documented Lady as an assistance/emotional support animal.

16. However, Plaintiff explained to Defendant MILLER-SUBER that the agreement did not distinguish her service animal from an emotional support animal. Defendant MILLER-SUBER assured Plaintiff Bavier that she would soon receive an updated agreement, which

3

would confirm Lady's status as a service animal and not an assistance/emotional support animal.

17. On or around September 15, 2014, Plaintiff BAVIER began her employment with Defendant HOFSTRA as a Resident Director at an annualized base salary of $34,000.00. In addition, Plaintiff was provided with University housing for the duration of her employment with Defendants.

18. On or about September 19, 2014, Plaintiff received a telephone call from Defendant's Human Resources representative, Lillian Collela. Ms. Collela informed Plaintiff that Defendant's required updated veterinarian paperwork regarding Lady. Plaintiff indicated that she would email her the pertinent documents requested. Ms. Collela then requested that Plaintiff sign yet another assistance animal agreement. Plaintiff notified Ms. Collela that Lady was not an assistance animal, but a service animal and that she would only sign a service animal agreement. In response, Ms. Collela wrote on the assistance animal agreement: "Jackie has a service animal and not an assistance animal; only agrees to terms that follow service animal guidelines and rights. Addendum agreement to follow."

19. Initially, Plaintiff BAVIER was permitted to have Lady with her during the course of her employment without any problems. However, that soon changed.

20. On or about October 29, 2014, the fire alarms in Nassau and Suffolk Halls sounded and residents began evacuating the building. Plaintiff BAVIER exited the residence with Lady and gathered with all other residents at the evacuation point. Only a few minutes after evacuating, a Public Safety Officer ("PSO") approached Plaintiff BAVIER and said "You can't have that dog." The PSO also stated "You are not allowed to have a dog in this building. You have to get rid of it or you can't go back in the building." Plaintiff BAVIER

informed the PSO that she was the Residential Director and Lady was her service animal. The PSO continued to harass Plaintiff BAVIER for approximately twenty (20) minutes before she was allowed to renter her residence with Lady.

21. On or about October 29, 2014, Plaintiff BAVIER complained to her supervisor, Jennifer Spade and reported the PSO's discriminatory behavior. Ms. Spade requested that Plaintiff document the narrative of the events and send it to her. Later that day, Sofia Pertuz, Dean of Students, called Plaintiff to get a recounting of the earlier events and a meeting was scheduled for the following day.

22. On or about October 30, 2014, Plaintiff BAVIER met with Defendant MILLER-SUBER. During the meeting Defendant MILLER-SUBER asked Plaintiff BAVIER whether Lady was wearing service animal labels to which Plaintiff responded in the negative. Defendant MILLER-SUBER then stated that Lady must wear service animal labels at all times. Plaintiff responded that Lady is not obligated to wear service animal labels and to require to do so would be in violation of the ADA. Defendant MILLER-SUBER indicated that she would ensure that more education would be provided to PSOs regarding service animals. Plaintiff BAVIER then requested an updated agreement confirming Lady's status as a service animal and not an assistance/emotional support animal. Defendant MILLER-SUBER stated that she would get a service animal agreement to Plaintiff as soon as possible and the meeting was concluded.

23. On or about November 4, 2014, pursuant to Defendant MILLER-SUBER's request, Plaintiff BAVIER had yet another meeting to discuss Lady. During this meeting, Defendant MILLER-SUBER informed Plaintiff BAVIER that Defendants would no longer recognize Lady as a service animal and would only recognize her as an assistance/emotional support animal.

5

Plaintiff BAVIER again insisted that Lady was a service animal that provided specific assistance. Defendant MILLER-SUBER stated that she would consult with Defendants legal team regarding the request for an accommodation and get back to her.

24. Following the November 4, 2014 meeting, just seven (7) weeks into her employment, Plaintiff BAVIER was no longer allowed to have Lady with her during the course of her employment. Plaintiff BAVIER was forced to leave Lady in her residence at all times.

25. On or about November 12, 2014, Defendant MILLER-SUBER sent Plaintiff BAVIER a memorandum indicating that if Plaintiff required a change in her accommodation that Plaintiff would have to submit the request to her in writing. Defendant MILLER-SUBER was never specific as to what additional documentation was required.

26. Plaintiff BAVIER was utterly confused and frustrated as to the reason Defendant MILLER-SUBER kept insisting for additional documentation for an accommodation that Plaintiff requested prior to Defendants hiring her.  Plaintiff then complained to Ms. Pertuz and Ms. Spade regarding Defendant MILLER-SUBER's constant request for documentation that Plaintiff had already provided and stated that she no longer felt comfortable with Defendant MILLER-SUBER overseeing her request for her service animal.

27. On or about December 3, 2014, Ms. Pertuz informed Plaintiff BAVIER that she would contact Human Resources to get the updated service animal agreement, as promised since September 2014. Unfortunately, Plaintiff never received an updated agreement from Defendants confirming that Lady was a service animal instead of an assistance/emotional support animal.

28. On or about April 1, 2015, Defendant HOFSTRA provided Plaintiff BAVIER with a housing agreement, which stated in pertinent part that Plaintiff would be responsible for any damage

in her apartment caused by her service animal.

29. Throughout the remainder of 2015, Plaintiff Bavier made several complaints to Defendant MILLER-SUBER regarding the discrimination she was suffering at work. Plaintiff also complained regarding Defendants failure to accommodate her request for a service animal.

30. On or about May 4, 2016, Plaintiff BAVIER met with Defendant MILLER-SUBER, who informed Plaintiff that Defendants never received any request for a workplace accommodation related to her disability. Plaintiff was surprised by this and insisted that she has submitted numerous requests for a service animal. However, at any time Plaintiff BAVIER attempted to discuss her request for an accommodation for a service animal, Defendant MILLER-SUBER would say things such as, "let's set aside the issue with the dog," "other than the animal what can the university do to help you," and refused to discuss her request for a service animal. Defendant MILLER-SUBER concluded the meeting indicating that Plaintiff Bavier should resubmit a request for a reasonable accommodation. Defendant MILLER-SUBER added that Plaintiff BAVIER's complaints of discrimination and harassment is under investigation.

31. Defendant MILLER-SUBER's failure to discuss Plaintiff BAVIER's request for a service animal demonstrated to Plaintiff that Defendants never intended to approve her request for a service animal.

32. On or about June 30, 2016, Plaintiff received a letter from Defendant MILLER-SUBER indicating that Plaintiff's complaints of discrimination was unsubstantiated and would not be pursued further. The letter also reiterated that Defendants were awaiting Plaintiff BAVIER's request for an accommodation.

33. On or about July 19, 2016, Plaintiff BAVIER resubmitted her request for a service animal to

Defendant MILLER-SUBER.

34. On or about July 20, 2016, Defendant MILLER-SUBER informed Plaintiff BAVIER via letter that her request for a service animal was insufficient for a workplace accommodation.

35. As such, on or about July 28, 2016, Plaintiff BAVIER submitted an updated letter to Defendants from Dr. Patrick Grehan, PhD., dated July 28, 2016, stating in pertinent part,

> [Plaintiff BAVIER] has a significant history of trauma and diagnosed with [PTSD]…Lady has helped [Plaintiff BAVIER] bring her anxiety into awareness when in a dissociated state and applied physical pressure to her chest to help her regulate her breathing when she experienced panic attacks. [Plaintiff has reported increased panic symptoms in response to challenges from Human Resources to restrict her access to her service animal in her workplace.

36. In response to Dr. Grehan's letter, on or about August 22, 2014, Defendant MILLER-SUBER sent an email to Plaintiff BAVIER stating, "We are in receipt of the letter from Dr. Grehan. With regard to the identified disability, as you are aware, presently the dog is permitted in your residence hall; please advise Human Resources if you are requesting access to your dog outside the residence hall or some other additional workplace accommodation."

37. Plaintiff BAVIER was again frustrated and confused by Defendant MILLER-SUBER's email. Plaintiff was obviously submitting a workplace accommodation as was discussed in the May 4, 2016 meeting and reiterated in Defendant's June 30, 2016 and July 20, 2016 correspondence. Nonetheless, Plaintiff responded and stated that she was requesting a workplace accommodation for a service animal.

38. On or about August 24, 2016, Plaintiff BAVIER submitted yet another complaint of discrimination to Defendant MILLER-SUBER.

39. On or about August 24, 2016, mere hours after Plaintiff BAVIER submitted a complaint of discrimination, Defendant MILLER-SUBER emailed Plaintiff stating,

> Human Resources has sent you numerous communications regarding the University's process for requesting disability accommodations. Other than your original request for your dog to remain with you in your residence, we have not received any other accommodation request from you…Dr. Grehan's note references a denial of access to 'Lady' in your residence, whereas the University had granted you that accommodation from the start.

40. On or about August 31, 2016, Defendant HOFSTRA terminated Plaintiff BAVIER's employment. Defendant MILLER-SUBER indicated the reason for her termination was due to a student complaint regarding Plaintiff BAVIER's alleged unprofessional conduct and interactions with students.

41. On or about September 1, 2016, Plaintiff received a letter from Defendants confirming her termination.

42. It is clear that due to **the close temporal proximity** between Plaintiff BAVIER's updated request for a service animal, complaints of discrimination and her termination, as well as all of the aforementioned suspicious actions, it is clear that Defendant HOFSTRA discriminated against, and terminated the employment of, Plaintiff BAVIER solely due to her disability (PTSD), request for a reasonable accommodation, and complaints thereof.

43. Plaintiff BAVIER was extremely humiliated and distraught that he was fired solely due to his disability (PTSD).

44. Plaintiff BAVIER's PTSD is a physical impairment within the meaning of the NYCHRL.

45. Plaintiff BAVIER's PTSD is an impairment that substantially limit one or more of his major life activities within the meaning of §12102(1)(A) of the ADA.

46. Plaintiff BAVIER felt offended, disturbed, and humiliated by the blatantly unlawful and discriminatory termination.

47. But for the fact that Plaintiff BAVIER was disabled, requested a reasonable accommodation,

and complaining of discrimination Defendants would not have terminated her employment.

48. Plaintiff BAVIER's performance was, upon information and belief, above average during the course of her employment with Defendants.

49. Plaintiff BAVIER has been unlawfully discriminated against, humiliated, and degraded, and as a result, suffers loss of rights, emotional distress, loss of income and earnings.

50. Defendant's actions and conduct were intentional and intended to harm Plaintiff BAVIER.

51. As a result of Defendant's actions, Plaintiff BAVIER feels extremely humiliated, degraded, victimized, embarrassed, and emotionally distressed.

52. As a result of the acts and conduct complained of herein, Plaintiff BAVIER has suffered and will continue to suffer the loss of income, the loss of a salary, bonuses, benefits and other compensation which such employment entails, and Plaintiff BAVIER has also suffered future pecuniary losses, emotional pain, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses.

53. Defendant's conduct has been malicious, willful, outrageous, and conducted with full knowledge of the law.  As such, Plaintiff BAVIER demands punitive damages as against both Defendants, jointly and severally.

### AS A FIRST CAUSE OF ACTION FOR DISCRIMINATION UNDER THE AMERICANS WITH DISABILITIES ACT
### (Not Against Individual Defendants)

54. Plaintiff repeats and realleges each and every paragraph above as if said paragraphs were more fully set forth herein at length.

55. Plaintiff claims Defendant QBS violated the Americans with Disabilities Act of 1990 (Pub. L. 101-336) (ADA), as amended, as these titles appear in volume 42 of the United States Code, beginning at section 12101.

56. Title 42 of the Americans with Disabilities Act of 1990, Chapter 126, Subchapter I, Section 12112, Discrimination [Section 102] states: "(a) General rule. - No covered entity shall discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment."

57. Defendant QBS engaged in an unlawful discriminatory practice by discriminating against Plaintiff because of his disability.

58. As such, Plaintiff has been damaged as set forth herein.

## AS A SECOND CAUSE OF ACTION FOR RETALIATION UNDER THE AMERICANS WITH DISABILITIES ACT (Not Against Individual Defendant)

59. Plaintiff repeats and realleges each and every paragraph above as if said paragraph was more fully set forth herein at length.

60. The ADA prohibits retaliation, interference, coercion, or intimidation.

61. 42 U.S.C. § 12203 provides:

   a) Retaliation. No person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter.
   b) Interference, coercion, or intimidation. It shall be unlawful to coerce, intimidate, threaten, or interfere with any individual in the exercise or enjoyment of, or on account of his or her having exercised or enjoyed, or on account of his or her having aided or encouraged any other individual in the exercise or enjoyment of, any right granted or protected by this chapter.

62. Defendants violated this section as set forth herein.

## AS A THIRD CAUSE OF ACTION FOR DISCRIMINATION AND FAILURE TO ACCOMMODATE UNDER THE NEW YORK STATE EXECUTIVE LAW

63. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this

complaint.

64. New York State Executive Law §296(1)(a) provides that, "It shall be an unlawful discriminatory practice for an employer or licensing agency, because of an individual's … disability … to refuse to hire or employ or to bar or to discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment"

65. Defendants engaged in an unlawful discriminatory practice by discriminating against Plaintiff and terminating his employment solely due to an arrest followed by a termination of that criminal action or proceeding in favor of Plaintiff.

66. Plaintiff hereby makes a claim against Defendants under all of the applicable paragraphs of Executive Law §296.

## AS A FOURTH CAUSE OF ACTION FOR DISCRIMINATION
## UNDER NEW YORK STATE EXECUTIVE LAW

67. Plaintiff repeats, reiterates and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

68. New York State Executive Law §296(7) provides that it shall be an unlawful discriminatory practice: "For any person engaged in any activity to which this section applies to retaliate or discriminate against any person because he has opposed any practices forbidden under this article."

69. Defendants engaged in an unlawful discriminatory practice by retaliating, and otherwise discriminating against Plaintiff because of Plaintiff's opposition to the unlawful employment practices of Plaintiff's employer.

## AS A FIFTH CAUSE OF ACTION FOR DISCRIMINATION

**UNDER NEW YORK STATE EXECUTIVE LAW**

70. Plaintiff repeats, reiterates and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

71. New York State Executive Law §296(6) provides that it shall be an unlawful discriminatory practice: "For any person to aid, abet, incite compel or coerce the doing of any acts forbidden under this article, or attempt to do so."

72. Individual Defendants engaged in an unlawful discriminatory practice in violation of New York State Executive Law §296(6) by aiding, abetting, inciting, compelling and coercing the discriminatory and retaliatory conduct.

**JURY DEMAND**

73. Plaintiff requests a jury trial on all issues to be tried.

**WHEREFORE**, Plaintiff respectfully requests a judgment against Defendants:

A. Declaring that Defendants engaged in unlawful employment practices prohibited by the ADA and the NYCHRL, in that Defendants discriminated against Plaintiff on the basis of his disability;

B. Awarding damages to Plaintiff for all lost wages and benefits resulting from Defendant's unlawful discrimination and to otherwise make him whole for any losses suffered as a result of such unlawful employment practices;

C. Awarding Plaintiff compensatory damages for mental, emotional and physical injury, distress, pain and suffering and injury to his reputation in an amount to be proven;

D. Awarding Plaintiff punitive damages;

E.  Awarding Plaintiff attorneys' fees, costs, disbursements, and expenses incurred in the prosecution of the action; and

F.  Awarding Plaintiff such other and further relief as the Court may deem equitable, just and proper to remedy Defendant's unlawful employment practices.

Dated: New York, New York
April 29, 2019

**LAW OFFICE OF YURIY MOSHES, P.C.**

By: _____/s/_____
Jessenia Maldoando, Esq.
*Attorneys for Plaintiff*
322 West 48th Street, 6th Floor
New York, New York 10036
(718) 504-6090
jmaldonado@mosheslaw.com