# Exhibit E



**Division of Human Rights**

NEW YORK STATE
DIVISION OF HUMAN RIGHTS

---

NEW YORK STATE DIVISION OF
HUMAN RIGHTS on the Complaint of

JACQUELINE BAVIER,
                              Complainant,

v.

HOFSTRA UNIVERSITY,
                              Respondent.

DETERMINATION AND
ORDER AFTER
INVESTIGATION

Case No.
10188782

Federal Charge No. 16GB703344

On 6/15/2017, Jacqueline Bavier filed a verified complaint with the New York State Division of Human Rights ("Division") charging the above-named respondent with an unlawful discriminatory practice relating to employment because of disability, domestic violence victim status, race/color, opposed discrimination/retaliation in violation of N.Y. Exec. Law, art. 15 (Human Rights Law).

After investigation, and following opportunity for review of related information and evidence by the named parties, the Division has determined that there is NO PROBABLE CAUSE to believe that the respondent has engaged in or is engaging in the unlawful discriminatory practice complained of. This determination is based on the following:

Complainant states that because she is White, was a victim of domestic violence and suffers from PTSD, she was unfairly discriminated against when she was denied an accommodation to have her service dog with her at on campus and when her supervisors partook in name-calling regarding Complainant's disability. Complainant asserts that after she complained about her discrimination, she was terminated in retaliation.

Respondent denies discriminating and retaliating against Complainant. Respondent asserts that Complainant was terminated based on a student complaint which outlined instances of Complainant's unprofessional behavior.

The evidence gathered over the course of the investigation of the instant complaint is insufficient to support Complainant's allegations of unlawful discrimination.

The Division finds that Complainant began her employment with Respondent on September 15, 2014. (*See* Complainant's Exhibit A). Complainant was responsible for the supervision of student resident assistants, developing specialized programming in the residence halls, participating in student conduct; and oversight of the residence hall government. (*See* Complainant's Exhibit B).

Respondent's policy states that no pets other than fish are allowed in the residence halls unless a student or employee request that an animal reside with them as a reasonable accommodation for a documented disability. Complainant asserts that when she was hired in 2014, she notified Respondent that she had a service dog and provided Respondent with all requisite paperwork for her dog.

The investigation finds that Complainant did sign an Assistance Animal Agreement on September 19, 2014, which states, "Assistance Animals are not permitted in any area of campus other than the employee's on-campus residence…". (*See* Complainant's Exhibit C). It is Complainant's contention that she was forced to sign the Assistance Animal Agreement in lieu of a Service Animal Agreement and was told that it does not matter which agreement she signs if her documentation provides that she indeed has a service animal. Complainant submitted a National Service Animal Registry ("NSAR") form which lists her dog as a Service Animal. (*See* Complainant's Exhibit D). However, the Americans with Disabilities Act ("ADA") states that service animal certification or registration documents which are sold online, such as the NSAR form Complainant provided, do not convey any rights under the ADA and the Department of Justice does not recognize them as proof that the dog is a service animal.

Complainant also submitted documentation from a Licensed Professional Counselor (LPC)/Licensed Clinical Alcohol and Drug Counselor (LCADC), Carlos Mejia, which states that Complainant is "in need of the emotional support of a therapy dog within their residence due to anxiety symptoms related to a history of severe PTSD." (*See* Complainant's Exhibit E). Although the letter was not from a medical doctor or psychologist/psychiatrist, the letter was honored by Respondent and Complainant's dog, Lady, was allowed to live with Complainant in Respondent's residence hall. It appears that Respondent complied with Complainant's documentation and allowed Lady to live with Complainant as specified in Mejia's letter.

Complainant participated in a one-party conference with the Division. During the conference, Complainant stated that she began working with Russ Smith (White), Chermele Christy (African-American), and Beth McGuire (White) in 2015. Complainant states that Smith, Christy, and McGuire constantly called Complainant stupid, ignorant, negligent, irresponsible, a liar, and that specifically Christy called complainant a "privileged white bitch." On February 16, 2016, Complainant also asserts that McGuire yelled at Complainant in a meeting in front of her co-workers. Complainant discussed the interaction with Christy and explained that she wanted to go to Human Resources. Christy explained that according to the Respondent's Harassment Policy, Complainant could speak directly to McGuire through the Informal Procedure, or go to Human Resources formally. The investigation finds that McGuire sent an email to Complainant to meet about the incident on February 16, 2016.

Complainant subsequently requested a meeting with the Assistant Vice President and Dean of Students, Sofia Pertuz, which was held on February 19, 2016. (*See* Complainant's Exhibit F). It appears that Complainant agreed to forward a detailed timeline of events and descriptions of interactions that Complainant felt were inappropriate in order for Respondent to assess the best way to address her concerns. During the meeting, it appears that Complainant was told that audio and video recording of meetings or conversations with any staff member is not permitted. In a later email to Pertuz, Complainant stated that she no longer wanted to pursue her concerns through the Dean of Students Office, and that she only utilizes a written log to document any instances. On April 26, 2016, Pertuz emailed Complainant and stated that as Complainant refused to provide any details, including instances or examples, Pertuz would be unable to refer Complainant to the appropriate policy, procedure, or resource.

On April 22, 2016, Complainant notified the Director of Human Resources, Evelyn Miller-Suber that she was forced into a situation by Christy, which was a trigger for Complainant's known and documented disability. Miller-Suber responded that Respondent knew that she had an assistance animal, however, there were no requests from Complainant regarding a disability-related workplace accommodation. Miller-Suber then suggested a meeting to discuss the process for documenting disabilities and requesting accommodations. (*See* Complainant's Exhibit G). Complainant provided the Division with an audio recording of the meeting, where it appears that Respondent was engaging in the interactive process with Complainant regarding her disability.

On August 29, 2016, a student resident assistant under Complainant's supervision filed a complaint with Respondent alleging instances of Complainant's unprofessional behavior, including that Complainant allowed students to have keys to Complainant's University apartment, that Complainant asked students to watch her dog, discussing management and supervisor problems with students under Complainant's supervision and creating a hostile and intimidating environment among the students under her leadership. (See Respondent's Exhibit K). Complainant denies all allegations made by the student. Respondent conducted an investigation and on August 31, 2016, Complainant was terminated for legitimate business reasons which were initiated by the student complaint against Complainant.

It appears that Respondent continually engaged Complainant for the purposes of learning about any unequal treatment and for any accommodations Complainant may have needed in the workplace. It seems that any delays in accommodating Complainant appear to be because Complainant stalled the interactive process. An employer cannot grant an accommodation when it does not know the needs created by the employee's disability. Further, based on the student letter, Respondent terminated Complainant because of egregious violations of school policy as Resident Director. Nevertheless, the Division notes that she received positive evaluations throughout her tenure.

The Division notes that Complainant has not complained about any disparate treatment in relation to her status as a domestic violence victim who needed time off to appear in court as a witness, to consult with a district attorney, or to obtain an order of protection.

The Complainant did raise specific examples of disparate treatment in her complaint and during her one-party conference. However, these examples appear to be sporadic and not enough to create a hostile work environment related to her race or disability.

In sum, the investigation does not support a causal nexus between the Complainant's disability, domestic violence victim status, race/color, opposed discrimination/retaliation and her separation from employment.

The complaint is therefore ordered dismissed and the file is closed.

PLEASE TAKE NOTICE that any party to this proceeding may appeal this Determination to the New York State Supreme Court in the County wherein the alleged unlawful discriminatory practice took place by filing directly with such court a Notice of Petition and Petition within sixty (60) days after service of this Determination. A copy of this Notice and Petition must also be served on all parties including General Counsel, State Division of Human Rights, One Fordham Plaza, 4th Floor, Bronx, New York 10458. DO NOT FILE THE ORIGINAL NOTICE AND PETITION WITH THE STATE DIVISION OF HUMAN RIGHTS.

Your charge was also filed under Title VII of the Civil Rights Act of 1964. Your charge was also filed under the Americans with Disabilities Act (ADA). Enforcement of the aforementioned law(s) is the responsibility of the U.S. Equal Employment Opportunity Commission (EEOC). You have the right to request a review by EEOC of this action. To secure review, you must request it in writing, within 15 days of your receipt of this letter, by writing to EEOC, New York District Office, 33 Whitehall Street, 5th Floor, New York, New York 10004-2112. Otherwise, EEOC will generally adopt our action in your case.

Dated: Dec. 29, 2017
Hempstead, New York

STATE DIVISION OF HUMAN RIGHTS

By: _____
Froebel Chungata
Regional Director